**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KONIKA MORROW<br><br>Plaintiff,<br><br>v.<br><br>CITY OF JOLIET, OFFICER STAPLETON, OFFICER VERTIN, and SERGEANT ESQUEDA<br><br>Defendants, | ) | No. 20 CV 3830<br><br>**Jury Trial Demanded** |

**COMPLAINT**

Plaintiff, Konika Morrow, complains against Defendants, City of Joliet, Officer Stapleton, Officer Vertin, and Sergeant Esqueda as follows:

**Introduction**

1. On July 9, 2019, Konika Morrow was at a prayer vigil that was broken up by officers from the Joliet Police Department.

2. Ms. Morrow is an African-American woman and is 41 years old.

3. As police officers arrived, Ms. Morrow verbally protested the officers' decision to tow her nephew's motorcycle.

4. Police officers instructed everyone around the motorcycle to move back.

5. Ms. Morrow complied.

6. Then, out of nowhere, Officer Stapleton tackled Ms. Morrow to the ground, pushed her over a curb, and injured her knee.

7. Officer Stapleton is a white man who is approximately 35 years old.

8. Officer Stapleton forcibly turned Ms. Morrow on her stomach and handcuffed her.

9. When Ms. Morrow told officers that she could not put weight on her leg and needed to go to the hospital, Sergeant Esqueda mocked her.

10. After Ms. Morrow was taken to the hospital, she was taken to the Joliet Police Station and charged with aggravated assault and obstructing Officer Vertin from carrying out his duties.

11. Because of Officer Stapleton's actions, Ms. Morrow suffered personal and pecuniary injures, including a tear in her meniscus, which will require surgery and rehabilitation.

## Jurisdiction and Venue

12. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. §§ 1331 and 1343(a), the Constitution of the United States, and supplemental jurisdiction, as provided under 28 U.S.C. § 1367(a).

13. Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. §1391, because the acts and events giving rise to the complaint occurred in the Northern District of Illinois, Eastern Division and because, upon information and belief, the Defendants reside here.

## Parties

14. Plaintiff Konika Morrow is currently a citizen of the United States and resident of the City of Joliet, Illinois.

15. Defendant City of Joliet is and was, at all times mentioned, an Illinois municipal corporation organized and existing as such under the laws of the State of Illinois.

16. Defendant City of Joliet is liable under the doctrine of *respondeat superior* for all torts committed by its employees and/or agents, including the named individual defendants who, at all times mentioned, were employees of the City of Joliet and acting within the scope of their employment.

17. Defendant Officer Stapleton is and was, at all times mentioned, a citizen of the United States residing within the jurisdiction of this Court.

18. At all times mentioned, Officer Stapleton was acting under color of state law and within the scope of his employment for the City of Joliet.

19. Defendant Officer Stapleton is being sued in his individual capacity.

20. Defendant Sergeant Esqueda is and was, at all times mentioned, a citizen of the United States residing within the jurisdiction of this Court.

21. At all times mentioned, Sergeant Esqueda was acting under color of state law and within the scope of his employment for the City of Joliet.

22. Defendant Sergeant Esqueda is being sued in his individual capacity.

23. Defendant Officer Vertin is and was, at all times mentioned, a citizen of the United States residing within the jurisdiction of this Court.

24. At all times mentioned, Officer Vertin was acting under color of state law and within the scope of his employment for the City of Joliet.

25. Defendant Officer Vertin is being sued in his individual capacity.

## **Facts**

26. On or around July 9, 2019, Ms. Morrow was at a prayer vigil for a family member who had gone missing.

27. The group for the vigil met on Ottawa Street, near the corner of Ottawa and McDonough Street in Joliet, Illinois at or around 5:00 p.m.

28. While Ms. Morrow was at the vigil, her nephew, Joshua Cooley, arrived on a motorcycle.

29. Joshua remained sitting on his parked motorcycle after he arrived, talking with others at the vigil.

30. A few moments later, multiple Joliet Police Department vehicles pulled up, blocking both sides of Ottawa Street.

31. One of the Joliet Police Department vehicles hit the rear tire of Joshua's motorcycle, pushing him and the motorcycle into the curb.

32. Ms. Morrow, her mother, and her sisters walked toward Joshua to ensure that he was okay.

33. As the family approached Joshua, multiple police officers exited their vehicles and began walking toward Joshua and his motorcycle.

34. One of these officers included Officer Vertin.

35. Ms. Morrow's sisters asked the police officers what was going on.

36. Multiple officers responded that they planned to tow the motorcycle, even though it was clear that Joshua could still ride it.

37. Sergeant Esqueda arrived at the scene next, and reiterated that the police officers planned to tow Joshua's motorcycle.

38. Ms. Morrow and her sisters offered to walk the motorcycle home and put it away, but the officers refused.

39. Joshua was still sitting on the motorcycle while he was speaking to the officers.

40. Suddenly, two officers grabbed Joshua and started to forcibly remove him from the motorcycle.

41. Ms. Morrow asked the officers to wait and allow Joshua to get off the motorcycle himself.

42. Ms. Morrow held the handlebars of the motorcycle to steady it after Joshua was removed by the officers.

43. Officer Vertin put his hand over hers on the handlebars, and Ms. Morrow pulled her hand away.

44. Just after the officers removed Joshua from the motorcycle, Officer Stapleton arrived.

45. Multiple officers commanded everyone to back away from Joshua and the motorcycle.

46. Ms. Morrow complied with the officers' commands and backed away.

47. Officer Vertin could see that Ms. Morrow was complying with his commands.

48. As Ms. Morrow turned away from the motorcycle, *without any warning*, Officer Stapleton appeared and took Ms. Morrow to the ground, pushed her over a curb and injured her leg.

49. Officer Stapleton turned Ms. Morrow on her stomach, pulled her hands behind her back, and handcuffed her.

50. Officer Stapleton had no probable cause or reasonable suspicion to seize Ms. Morrow.

51. No reasonable officer would have believed that Ms. Morrow had committed a crime, planned to commit a crime, or posed a danger to any officer or other person.

52. As Ms. Morrow stood up, she told Officer Stapleton that she could not put weight on her leg.

53. Officer Stapleton shouted in Ms. Morrow's face, "When an officer says back up, back up and do not talk back."

54. Officer Stapleton attempted to put Ms. Morrow in the back of a police vehicle, but Ms. Morrow reiterated that she was injured and asked for an ambulance.

55. Sergeant Esqueda approached Ms. Morrow, and Ms. Morrow told the Sergeant that she needed an ambulance.

56. In a mocking voice, Sergeant Esqueda, said "Get the baby an ambulance."

57. While waiting for an ambulance, Ms. Morrow witnessed another officer tell Officer Stapleton, "Good job," and saw the two officers congratulate each other.

58. Ms. Morrow, Joshua, and the other civilians at the vigil are African-American.

59. Officers Stapleton and Vertin, along with the majority of the officers who arrived at the vigil, are white.

60. After being taken to the hospital, Ms. Morrow was taken to the Joliet Police Station.

61. Ms. Morrow was charged with aggravated assault and obstructing a peace officer.

62. The charge of aggravated assault was dropped.

63. In or around August 2019, Officer Verdin initiated criminal proceedings against Ms. Morrow in the case *People of the State of Illinois v. Konika Morrow* for obstruction of a peace officer.

64. The case is pending in the Circuit Court of Will County.[1]

65. The criminal complaint filed against Ms. Morrow states that Ms. Morrow "obstructed the performance of Joliet Police Department Police Officer Alan Vertin."

66. Defendants agreed, upon information and belief, to cover up Officer Stapleton's wrongful takedown of Ms. Morrow by creating a false report and charging Ms. Morrow.

[1] Due to the pendency of the state court criminal proceeding, Konika Morrow may file a Motion To Stay pending the conclusion of the criminal proceeding pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). Due to the one-year statute of limitations, Konika Morrow chose to commence this action before the completion of her criminal proceeding. Otherwise, Ms. Morrow would be in the position of having to file multiple and successive lawsuits arising from the same July 9, 2019 incident, exposing her to allegations of claim-splitting.

67. As a result of Officer Stapleton's takedown, Ms. Morrow suffered a tear in her meniscus, which will require surgery and rehabilitation.

**Count I**
**42 U.S.C. § 1983 – Excessive Force**
**(against Officer Stapleton)**

68. Each of the foregoing paragraphs are incorporated herein.

69. Defendant Officer Stapleton, without provocation, used excessive, unnecessary, and/or unreasonable force against Ms. Morrow in violation of her rights under the United States Constitution.

70. Defendant Officer Stapleton's conduct was intentional, willful, malicious, in reckless disregard for, deliberately indifferent to and/or callously indifferent to Ms. Morrow's constitutional rights.

71. As a result of Defendant Officer Stapleton's unjustified and excessive use of force, Ms. Morrow suffered injures of a personal and pecuniary nature.

**WHEREFORE**, Plaintiff, Konika Morrow, prays for entry of a judgment against Defendant Officer Stapleton, for compensatory damages, punitive damages, costs, reasonable attorneys' fees and for such other and further relief as this Court deems equitable and just.

**COUNT II**
**42 U.S.C. §1983 – Violation of Due Process (Fourteenth Amendment)**
**(against Officer Stapleton, Officer Vertin, and Sergeant Esqueda)**

72. Each of the foregoing paragraphs are incorporated herein.

73. As described more fully above, Officer Stapleton, Officer Vertin, and Sergeant Esqueda, acting individually, jointly, and/or in conspiracy, deprived Konika Morrow of her constitutional right to due process and a fair trial.

74. In the manner described more fully above, the Defendants fabricated a false report about Ms. Morrow.

75. Absent this misconduct, the criminal prosecution could not and would not have been pursued.

76. The Defendants' misconduct directly resulted in the unjust criminal prosecution of Ms. Morrow in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

77. As a result of this violation of her constitutional right to a fair trial, Ms. Morrow has suffered injuries of a personal and pecuniary nature.

78. The misconduct described in this count is objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

**WHEREFORE**, Plaintiff Konika Morrow demands judgment against Defendants Officer Stapleton, Officer Vertin, and Sergeant Esqueda for compensatory damages, punitive damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

## Count III
## 42 U.S.C. § 1983 – Conspiracy to Deprive of Constitutional Rights
## (against Officer Stapleton, Officer Vertin, and Sergeant Esqueda)

79. Each of the foregoing paragraphs are incorporated herein.

80. Defendants knew that Defendant Stapleton had no probable cause to arrest and seize Ms. Morrow.

81. Officer Vertin witnessed Ms. Morrow comply with officers' commands and back away from Joshua's motorcycle.

82. Defendant Officer Vertin and Defendant Sergeant Esqueda could tell that Defendant Officer Stapleton seized and arrested Ms. Morrow without probable cause.

83. Defendants heard Ms. Morrow say that she was injured and needed an ambulance and, on information and belief, witnessed the ambulance take Ms. Morrow away.

84. Defendants agreed, upon information and belief, to charge Ms. Morrow with aggravated assault and obstructing an officer to cover up Defendant Officer Stapleton's unlawful action.

85. Defendants Officer Stapleton, Officer Vertin, and Sergeant Esqueda, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deprive Ms. Morrow of her constitutional rights.

86. In so doing, these co-conspirators conspired to accomplish an unlawful purpose (*i.e.*, the false arrest and prosecution of Konika Morrow) by unlawful means.

87. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

88. The misconduct described in this count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Konika Morrow's constitutional rights.

89. As a result of this violation of her constitutional rights, Ms. Morrow has suffered injuries of a personal and pecuniary nature.

**WHEREFORE**, Plaintiff Konika Morrow demands judgment against Defendants Officer Stapleton, Officer Vertin, and Sergeant Esqueda for compensatory damages, punitive damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

**Count IV**
**42 U.S.C. § 1983 – Failure to Intervene**
**(against Officer Stapleton, Officer Vertin, and Sergeant Esqueda)**

90. Each of the foregoing paragraphs are incorporated herein.

91. In the manner described above, during the constitutional violations described above, one or more Defendant officers stood by without intervening to prevent the violation of Konika Morrow's constitutional rights, even though they had the opportunity to do so.

92. Defendants Officer Vertin and Sergeant Esqueda refused to intervene to stop Officer Stapleton from using excessive force on Konika Morrow on July 9, 2019.

93. Defendants Officers Stapleton, Officer Vertin, and Sergeant Esqueda refused to intervene to report what actually occurred between Officer Stapleton and

Ms. Morrow at the prayer vigil such that she would not be charged with obstructing an officer.

94. The misconduct described in this count is objectively unreasonable and was undertaken intentionally with willful indifference to Konika Morrow's constitutional rights.

95. As a result of this failure to intervene to prevent the violation of Konika Morrow's constitutional rights, Ms. Morrow suffered pain and injury as well as emotional distress. These officers had a reasonable opportunity to prevent this harm, but failed to do so.

96. As a direct and proximate result of Defendants' aforementioned intentional conduct, Konika Morrow, suffered serious injuries of a personal and pecuniary nature.

**WHEREFORE**, Plaintiff, Konika Morrow, prays for entry of a judgment against Defendants Officer Stapleton, Officer Vertin, and Sergeant Esqueda, for compensatory damages, punitive damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

**COUNT V**
**State Law Claim – FALSE ARREST**
**(against Officer Stapleton)**

97. Each of the foregoing paragraphs are incorporated herein.

98. There was no probable cause to arrest and seize Konika Morrow.

99. Konika Morrow had not obstructed any officers from their duties and was complying with officers' directions to back away.

100. Despite the lack of probable cause, Defendant Officer Stapleton seized Konika Morrow and took her into custody.

101. Defendant Officer Stapleton did not have probable cause or a reasonable suspicion based on articulable facts that Konika Morrow was involved in criminal activity.

102. Defendant Officer Stapleton seized Konika Morrow without any legal justification and that seizure was unreasonable under the circumstances.

103. There were no exigencies that warranted seizing Konika Morrow.

104. Defendant Officer Stapleton seized Konika Morrow solely to intimidate her and the people around her.

105. Defendant Officer Stapleton knew that intimidation alone is not a valid or legal basis to arrest someone.

106. Defendant Officer Stapleton violated Konika Morrow's rights in arresting her without probable cause.

107. As a direct and proximate cause of Defendant Stapleton's conduct, Konika Morrow suffered serious injuries of a personal and pecuniary nature.

**WHEREFORE**, Plaintiff, Konika Morrow, prays for entry of a judgment against Defendant Officer Stapleton, for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

**COUNT VI**
**State Law Claim – BATTERY**
**(against Officer Stapleton)**

108. Each of the foregoing paragraphs are incorporated herein.

109. Defendant Officer Stapleton intentionally made offensive bodily contact against Konika Morrow and inflicted bodily harm upon her.

110. Defendant's bodily contact with Konika Morrow was intentional, unauthorized, and offensive.

111. Defendant Stapleton lacked justification to engage in bodily contact with Konika Morrow, because Defendant Stapleton had not identified Konika Morrow as having committed any offense.

112. Defendant's bodily contact with Konika Morrow was willful, malicious, in reckless disregard for, deliberately indifferent to and/or callously indifferent to Konika Morrow's constitutional rights.

113. Plaintiff was physically harmed when the Defendant aggressively grabbed Konika Morrow, took her over the curb to the ground, turned her over, pulled her arms behind her back and handcuffed her.

114. The force used by Defendant Officer Stapleton was not justified, was unreasonable, and was excessive.

115. There were no exigencies that warranted the force used against Ms. Morrow, because, among other things, she had complied with officers' instructions to move.

116. As a direct and proximate cause of the battery, Konika Morrow suffered injuries of a personal and pecuniary nature.

**WHEREFORE**, Plaintiff Konika Morrow prays for judgment against Defendant Officer Stapleton for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

**COUNT VII**
**State Law Claim – Malicious Prosecution (Criminal Prosecution of *People of the State of Illinois v. Konika Morrow*)**
**(against Officer Stapleton, Officer Vertin, and Sergeant Esqueda)**

117. Each of the foregoing paragraphs are incorporated herein.

118. Defendants Officer Stapleton, Officer Vertin, and Sergeant Esqueda caused a criminal prosecution to commence and/or continue against Konika Morrow, namely, the criminal prosecution captioned *People of the State of Illinois v. Konika Morrow*.

119. Defendants Officer Stapleton, Officer Vertin, and Sergeant Esqueda maliciously commenced and/or continued the criminal prosecution without probable cause for the commencement and/or continued prosecution of those proceedings.

120. As a result, Konika Morrow suffered injuries of a personal and pecuniary nature.

121. Defendants Officer Stapleton, Officer Vertin, and Sergeant Esqueda initiated, facilitated and/or continued this malicious prosecution by the creation of a false report and/or otherwise wrongfully misrepresenting and/or withholding evidence that would exculpate Konika Morrow.

**WHEREFORE**, Plaintiff Konika Morrow prays for judgment against Defendants Officer Stapleton, Officer Vertin, and Sergeant Esqueda for

compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

**COUNT VIII**
**State Law Claim – INDEMNIFICATION**
**(against the City of Joliet)**

122. Each of the foregoing paragraphs are incorporated herein.

123. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 745 ILCS 10/9-102.

124. Defendants Officer Stapleton, Officer Vertin, and Sergeant Esqueda are, or were, employees of the Joliet Police Department who acted within the scope of their employment in committing the misconduct described above.

125. Defendant City of Joliet is obligated to pay any judgment for compensatory damages entered against the Individual Defendants.

**WHEREFORE**, in the event that a judgment for compensatory damages is entered against Defendants Officer Stapleton, Officer Vertin, and Sergeant Esqueda, Plaintiff prays that a judgment be entered against Defendant City of Joliet requiring payment of any such judgment and the associated attorneys' fees and costs.

**JURY DEMAND**

Plaintiff Konika Morrow hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

DATED: June 30, 2020.

PLAINTIFF KONIKA MORROW

By: /s/Victor P. Henderson
One of her Attorneys

Victor P. Henderson
Kelsey A. VanOverloop
**HENDERSON PARKS, LLC**
140 South Dearborn Street, Suite 1020
Chicago, Illinois 60603
Tel. (312) 262-2900
vhenderson@henderson-parks.com
kvanoverloop@henderson-parks.com

ILND 44 (Rev. 09/07/18)

# CIVIL COVER SHEET

The ILND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. ***(See instructions on next page of this form.)***

## I. (a) PLAINTIFFS

Konika Morrow

**(b)** County of Residence of First Listed Plaintiff: Will, Illinois
*(Except in U.S. plaintiff cases)*

**(c)** Attorneys *(firm name, address, and telephone number)*

Henderson Parks, LLC, 140 South Dearborn Street, Suite 1020, Chicago, Illinois 60603, Tel. (312) 262-2900

## DEFENDANTS

City of Joliet, Officer Stapleton, Officer Vertin, and Sergeant Esqueda

County of Residence of First Listed Defendant: Will, Illinois
*(In U.S. plaintiff cases only)*
*Note: In land condemnation cases, use the location of the tract of land involved.*

Attorneys *(if known)*

## II. BASIS OF JURISDICTION *(Check **one** box, only.)*

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question *(U.S. Government not a party)*
☐ 2 U.S. Government Defendant
☐ 4 Diversity *(Indicate citizenship of parties in Item III.)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For Diversity Cases Only.)*

*(Check **one** box, only for plaintiff and **one** box for defendant.)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Check **one** box, only.)*

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**TORTS**

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
☐ 530 General
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Habeas Corpus:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee – Conditions of Confinement

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New Drug Application
☐ 840 Trademark

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729 (a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 485 Telephone Consumer Protection Act (TCPA)
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**CIVIL RIGHTS**
☒ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition)
☐ 465 Other Immigration Actions

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAXES**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

## V. ORIGIN *(Check **one** box, only.)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation
☐ 8 Multidistrict Litigation Direct File

## VI. CAUSE OF ACTION

(Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

42 U.S.C.Section 1983-excessive force/mal. pros.

## VII. PREVIOUS BANKRUPTCY MATTERS

(For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

## VIII. REQUESTED IN COMPLAINT:

☐ Check if this is a **class action** Under rule 23, F.R.CV.P.
**Demand $** $250,000.00+
**Check Yes only if demanded in complaint.**
**Jury Demand:** ☒ Yes ☐ No

## IX. RELATED CASE(S) IF ANY

*(See instructions)*
Judge
Case Number

**X. Is this a previously dismissed or remanded case?** ☐ **Yes** ☐ **No** **If yes, Case #** **Name of Judge**

**Date:** June 30, 2020

**Signature of attorney of record:** Kelsey A. VanOverloop

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44**

Authority for Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties**. This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin**. Place an "X" in one of the six boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity. Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Previous Bankruptcy Matters** For nature of suit 422 and 423 enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this court. Use a separate attachment if necessary.

**VIII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P. Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**IX.** **Related Cases**. This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**X.** **Refiling Information.** Place an "X" in the Yes box if the case is being refiled or if it is a remanded case, and indicate the case number and name of judge. If this case is not being refiled or has not been remanded, place an "X" in the No box.

**Date and Attorney Signature.** Date and sign the civil cover sheet.